Our next case of the morning is case number 23-3109 and 23-3138, LJM Partners v. Barclays Barclays Capital Alright and we'll recognize Ms. Lawrence Morning. May it please the court. This court should reverse the decision of the lower court on statute of limitations grounds. This is a CEA case where the district court actually upheld the manipulative device claims on the merits only to erroneously dismiss it based on timeliness alone. In demanding that plaintiffs name the unknown defendants by February 2020, the court set up an impossible and unworkable standard for us. Let's talk about standing first if you don't mind. Your Honor, I had reserved the time. My colleague represents LJM. Then standing solely relates to them. So we're going to split up? That's how we had to do it. I cannot speak to their standing. I That's what I was saying. It sets up an unworkable standard on the statute of limitations. Indeed, the lower court's decision stresses that the complaint survived because it alleged such things as which defendants performed the manipulative acts and when those manipulative acts were performed. But we simply could not have known those things prior to receiving Doe discovery. But why is that the case? Doesn't the complaint, the original complaint, I mean, alleges that it alleges injury, alleges that your client was injured. It alleges that based upon the statistical analysis of kind of the market movements, that it was exceedingly improbable. I don't know if that's a term or impossible for that to have been for that market movement to have taken place absent some manipulation. So you knew at the time that there was or if you allege that there was some misconduct there and that you were injured by it. Why isn't that enough? Isn't that the general rule with regard to federal claims? It's basically that you know you're injured and you know that you were injured because something bad happened. In this case, the rule 9b, that simply wouldn't be enough. What's important to remember is that the initial complaints had only public data. The public data only gives a snippet and doesn't even give you any clue as to who posted those quotes. It's only with the non-public data that you can see the patterns of manipulation and the general picture of which defendants, whether by pseudonym or when unmasked by name, were And even furthermore, it was only later in the game, once CBO filed its declaration, that we could recreate the Vicks in order to say which manipulative quotes were quite possibly or most likely included in the Vicks. And the district court opinion stresses that when deciding Sienta. So without those facts, we simply could not have alleged Sienta. We could have tried, but under 9b, we would have failed. So district court also takes your client to task for waiting until two days before the statute runs out before filing the complaint. Could you address that please? Of course, Your Honor. So the short answer is it wouldn't have There is nothing we could have done that was different. LJM twice moved the court for expedited discovery and was twice denied. Both of those denials, despite what defendants may say, were based on overarching principles of streamlining with the MDL. They didn't have anything to do with the quality of the request, but it was the court's interest in streamlining and preventing tag-along cases. It didn't have anything to do with kind of how broad the requests were, because certainly that was the defendants, one of the defendants argument in opposing both requests was that they were basically going into merits discovery and that the requests themselves were too broad for what your client wanted to obtain. So when one reads the district court's decisions and the oral arguments on those requests, it's very clear that the reasons that the district court gave for denying those two requests for expedited discovery were because of concerns with streamlining with the MDL. In fact, in their reply brief for the second motion to expedite discovery, LJM specifically said, if this court has overbreath concerns, we'd be more than happy to Does it matter that then the MDL is dismissed and you still wait three weeks, I believe it is, to file? We waited about two and a half weeks to file at that point. That's simply the timing that it took to draft a complaint and to get it on file. I don't think that plays into the larger analysis. We still, whether we would have been three weeks before the February date or a week before, that we're simply trying to file the best initial complaint we could file. But I'm glad Your Honor asked about equitable tolling because even if this court decides that the statute of limitations should have began in February 2020, and I do believe there's an ambiguity in this circuit and in the statute of limitations for CEA claims itself, but even if we don't look at that, simply must apply in this case. This circuit has... How are you able to demonstrate the diligence though? Absolutely. So at every step of the way, and I know because I lived it, we tried to obtain the discovery necessary to plead our claims. So not only was it over 16 months that we were delayed because of the MDL stay, but it's over 13 months that we were delayed by CBOE's inactivity from producing a wrong data set. But again though, we're not dealing squarely with the issue as the district court posed it. When you file September 4th, two days before if the cruel date is when the actual injury occurs, we're not dealing with the question of the awareness that once you filed it on February 4th, being aware that that would not toll the statute of limitations because it's filed in the names of John Doe's. You still don't know the names of the John Doe's to stop the clock. And so going back to the to the question, the diligence of why before the 4th of February was this not filed, with the understanding that CBOE would not have responded to a request to disclose those names at least to two roads and they're not being a lawsuit in place. So my answer to that is twofold, Your Honor. The first is obviously we very quickly, once we filed, and we being two roads, moved for that expedited discovery. The other answer I would give is again to show that LJM had done everything in its power, besides honestly pestering the court, to try to get the expedited discovery. So, and then the other... It sounds as though we're wanting to kind of attach our wagon to LJM. Their diligence equates to our diligence as well. Is that the argument? I certainly think LJM has a better equitable tolling argument. The rational answer for why we waited until February was, first of all, we were watching the LJM case. And second of all, this is a fund that lost $610 million and had to liquidate. And our primary concern was trying to make shareholders whole. So it was a very frantic time period when that was our primary concern. And when there's a discovery stay in place already from the MDL, it seemed like we should have put our energies there. And frankly, that's what we did. I noticed the clock and I need to reserve time. Thank you. Thank you. Are we hearing from Mr. Cortazar now? Have I pronounced your name correctly? Correct, yes. May it please the court. Business partners like LJM suffer injuries when their partnerships do. And their derivative injuries establish Article 3 standing. This is the holding of this court's decisions in ADCO Oil Company versus Revell and Frank versus Hedisman and Frank. Let's look at identified capital investments. All right. In that case, what I'm listening for is not derivative, but an injury in fact to LJM. And so when we look at the interests of these third-party plaintiffs. So what I'm wanting to hear is what is the injury in fact to LJM? So the injury in fact to LJM is that it held an interest in these partnerships and it suffered when those were liquidated. And what are the interests that LJM had with, so not the 44 individual investment accounts. You want the court to just focus on the limited partnerships? Limited partnerships as well as under Rule 17, we should be able to ratify. Because as we were preparing this complaint, we were in constant communication with the separate funds who were relying on us. So we really had a real party and interest problem. We understood that by filing under LJM, that would be the most efficient way of bringing the complaint and that it would simplify. And what is the interest in the limited partnerships that LJM had? It had a continuing interest in them being extant and it would have had reimbursement rights for any success that those funds had. And where is that alleged in the complaint? That's what I'm asking. So it's alleged in paragraph three where it says that LJM and its funds suffered catastrophic injuries. You also have an appendix. We also have an appendix that explains the different funds that were listed there. And so I think there's a there's a strong inference from the fact that paragraph three mentions LJM and its funds in the conjunctive and in the appendix. I'm trying to separate. I know what the complaint says. I'm asking you, counsel, to separate it from the conjunctive. I'm needing to hear an injury in fact to LJM. Right. Which would keep collapsing, but I'm asking you to pull it apart. So LJM had reimbursement rights. It had ownership rights in a certain percentage of all the limited partnerships. And where is that in the complaint? It is not explicit in the complaint, but that is an inference that must be drawn under Frank v. Haddison and Frank and under ADCO oil. That's the holding of those cases. In those cases there was no, the court wasn't concerned about the specific allegation that the partnership owned or that the general partner owned X percentage. It flowed from the very nature of partnerships and the understanding that partners themselves are not going to go through the work of joining the partnership of going through the work without some compensation right. At this point I'd like to reserve the remainder two minutes of my time. And so before we do that I still need to answer the question regarding the 44 investment accounts. What's your position regarding standing for, because we have to ask the those of 44 other non-partnership accounts, LJM would have had an interest in being paid a certain percentage of the success of those accounts. And so when those were liquidated those reimbursement rights went under. But I think it's important to understand that under Rule 17 there does not have to be... Can I get to Rule 17 if you don't have standing? Absolutely. Well And so then that would allow us to use Rule 17 to bring everyone else in. And that's essentially what happened in CW Capital in the dicta in that case where the court said... What I'm hearing you tell me is that because I have standing for six companies that spreads to 44 individual accounts that I don't have standing for. Correct. Because that's under the complaint I think there's an understanding that LJM suffered catastrophic injury because of all the harm that was caused to the funds. And that's in paragraph 3. It's also in footnote 4. Thank you. All right. Thank you Mr. Cortazar. Mr. Davies. Yes. Good morning. May it please the court. Andrew Reece Davies arguing for the appellees. The judgments should be affirmed based on the allegations in the complaints. Both plaintiffs claims are time-barred. LJM also lacks Article 3 standing because the complaint does not allege it suffered any injury. Finally contrary to the district court's conclusion these complaints do not plausibly plead a claim under the Commodity Exchange Act. I'd like if it's okay with the court to start with the time bar issue which deals with both cases. And I'd like to start if I could with the equitable tolling piece of this because a successful invocation of equitable tolling would be the only way this claim could possibly not be time barred. Based on the allegations in the complaint these plaintiffs were aware of their injury in February of 2018. It was based on publicly available order activity and they told the district court this is a DSA 300. Referring back to their original complaints they wrote the only missing information from plaintiffs complaints is the bare identity of the Doe manipulators. And the district court accepted that argument at My friend made a reference to Rule 9b and I think was arguing that there should be some delayed accrual because of the need to plead under Rule 9b. That is not right. I'd refer the court to the Supreme Court's decision in Roe-Teller against Wood 528 U.S. at pages 560 through 561 where the Supreme Court rejected the particularity has some impact on the accrual date and said that the safety valve there if there is one is equitable tolling. With that I'd like to turn to equitable tolling. These plaintiffs cannot allege facts sufficient to rely on equitable tolling here. What do we do with U.S. versus Kubrick? The Supreme is an injury and you must know who committed the injury for the accrual date to begin running. And so the argument I'm hearing from counsel is the accrual date could not have started in 2018 when the injury occurs because we still don't know who committed the injury. Well they certainly knew by description who the defendants were. They say it was the SIBO designated SPX option market makers and I think the argument that's being made is for something that comes down to a name discovery accrual rule but there is no such rule. Yes I acknowledge there are cases that talk about knowing who injured you but reading those cases what they actually establish is that you have to know the source of your injury. For example they rely on reply on the Schaefer case out of this court an old case from from 1975 but the situation there was that some of the defendants had been indicted and those were sued because their involvement in causing the harm was known. It was much later that the involvement of a whole different set of people came to light and so a cruel was deferred as to those people whose involvement in causing the injury was known. It's quite different here they knew who the people were by category they just didn't know the names and that if there is an escape from it is an issue for equitable tolling. Is that sufficient? Not accrual. Just the category is that sufficient? Absolutely under the case law if you know the injury and you have a find out within the limitation period that's I'd refer the court to this decision this court's decision in CADA 920 F second at 451 where the court says equitable tolling is the remedy for someone who cannot obtain information necessary to decide whether the injury is due to wrongdoing and if so wrongdoing by the defendant. So on the equitable tolling side of this I would like to take the court through the actual chronology of what happened because the argument that's being made is that the district court shut down any Doe discovery because of the PSLRA stay that was in effect in the class action. That's just not true and it's not supported by the record. So first of all LJM in discovery that it labeled Doe discovery but in fact sought discovery into how the VIX was calculated and information to allow LJM to discern the strategies of the entities that had placed those quotes. There was a hearing and the transcript is at DSA 74. The district court said I have a strong interest in making sure things are coordinated and people aren't trying to do an end run around a system that we have in place to get to the bottom of what's at issue in this case and in the MDL which is what was going on with the VIX process and was their manipulation. The problem was not breadth. The problem was not that there was a stay. The problem is that this was merits discovery. Then I acknowledge March 2019 LJM docket number 22 which is partially quoted in the current posture of LJM partners. Discovery will not be permitted in that case until I conclude that Doe discovery in the class action is appropriate but no one understood that to mean that there was a definitive ruling no Doe discovery while the class action motion to dismiss remains pending including LJM because in June when the PSLRA stay was still in effect in the class action LJM comes back again and renews its request. There's a hearing again the transcript is in the record DSA 107. The district court again is clear that it is not blocking Doe discovery. Its problem is with the kinds of information that LJM was seeking. LJM at DSA 105 says acknowledges we want this data to determine whether or not there was anomalous trading happening during that period of time. The district court asks is what you're asking for really the right way to find out who those Doe's are and then the district court issues an order the August 2019 order and denies that second request because it's seeking quotes extensive merits discovery. Enough information to glean the strategies of market participants so that it can apply the label of manipulation to specific Doe's. This is not a case where a plaintiff simply needs to cut and paste an identifiable name into an existing allegation and the last piece of this chronology that's also very important and very telling which is that when LJM and True Roads come back in February 2020 and finally make the request that was granted which is not just narrower it's an entirely different kind of request a three-stage request. Yes the PSLRA stay had expired by that point there is no reference to that in their motion and wouldn't you expect that to be there if they genuinely thought that the PSLRA stay was what had precluded Doe discovery in the past it's all about this is a new process we've come up with and they even say plaintiffs have followed this courts directions and prepared a narrowly tailored request and they cite back to the August 2019 order for that and so the idea that it was the PSLRA stay that prevented the Doe discovery is just not true. I'd like to talk about the standing of LJM. Let me ask you a question about that so there is an appendix to the complaint and it does explain how LJM works how it gets its profits what its management strategy is why isn't that information you know we can consider information attached to a complaint why isn't that information plus what we see in the complaint about LJM's role sufficient to show that it did lose money when this manipulation that they alleged took place. You know that and the argument that's being made is really untethered to anything in the complaint does not allege that LJM suffered some consequential business injury which is what counsel was arguing this morning I think is what your honor is alluding to. There is a passing reference in the context of a sentence that actually is talking about the trading losses that the investors suffered and all it says is that LJM would not have suffered these sort of continued to operate as a going concern so there really isn't squarely an allegation that that injury ever took place it also wasn't argued below and and I'll say this finally on that point you know even if there had been an actual allegation of consequential business harm to LJM that's not the injury that this lawsuit is seeking to remedy and separately that is not a harm that is remediable under the Commodity Exchange Act anyway and so it wouldn't give them either article 3 standing under TransUnion because there is a mismatch between the injury that they are asserting for standing and the injury they're trying to remedy through this lawsuit separately they would lack statutory standing under the CEA because they did not trade for their own can we I think the argument argument that LJM is making a part of it if I understand correctly is that under the standard under rule 12 we should we can reasonably infer that because LJM is a general partner in a limited partnership that it has some business interest in that was injured when the partnership itself had to dissolve as a going concern whether it's business reputational harm you know future profits profits they would have gotten had the company been going forward what are your thoughts on well they had under the case law an obligation to plead facts clearly establishing every element of article 3 standing if those facts are true they are well known to LJM and could very easily have been alleged they do not appear in the complaint they really can't be fairly inferred from what is in the complaint what they're really asking the court to do is to speculate based on a handful of words cropped from different places in the complaint it's just not enough and what they do allege is is contrary to the idea that they suffered certainly an investment injury they describe themselves as the general partner that doesn't tell us what their interest was they describe themselves as an advisor and a manager and it's also concerning to say the least that different LJM entities are suing the futures commercial merchant in New York claiming that it was they that suffered the injury that is being the subject of this lawsuit and we're not asking the court to decide who's right the point being that the failure to plead injury here appears to be concealing a real problem with the standing of this plaintiff if I could finally address briefly the alternative grounds for affirmance first of all a scientist the complaint really boiled down does not plausibly support the narrative that exactly the same time eight separate market makers independently decided to manipulate the VIX by engaging in exactly the same misconduct what we have instead and it's set in the reply at page 14 instead of facts what we really have are just pejorative labels and conclusions spoofing flashed spoofing but all they point to is the duration of the quotes and under the court's decision in kosher standing alone the duration of a quote does not plead spoofing on reply they pivot to repetition as the problem in their brief their reply brief at pages 5 to 16 they even append some charts that purport to show quote repetition by two of the defendants but even on the face of those charts the quotes are not repeated the level changes over time and so again we really all just what we have is rhetoric and labels unsupported by the facts and what is in the complaint undercuts the rhetoric because there is an obvious alternative explanation which is that all of this is happening during a day when the US equity markets are suffering the kind of turbulence that they haven't seen in years you know they point to the fact that on a closing day basis the S&P was down only above 4% but materials that are quoted in the complaint reflect the fact that during the trading day and recall that this is an index that is published every 15 seconds during the day the Dow had its most violent dive in record of 1500 points at one point and finally on causation they do not plead that either based on the reply they seem to have given up on the idea that the defendants manipulated the VIX and the VIX had an impact on the instruments that they were buying on a different exchange and I know my time is up but at page 23 of their reply the plaintiffs perhaps inadvertently revealed the detail that they would need to have pleaded to establish that the manipulation of the SIBO flowed through to the instruments that they was trading on the CME none of it is there if you look at the paragraphs in the complaint that are that are cited in support of this all it says is that as a general matter these are broadly comparable instruments that's no better than what the Second Circuit rejected in Haring which is just saying it's the same market isn't enough okay thank you mr. Davies miss Lawrence thank you first of all we patently disagree that the only way to save this case is through equitable tolling I refer the court to the Supreme Court's Merck decision also the fact that counsel claims that we could have just listed market makers and that would have been enough is belied by his own statements where he stands up here and complains that the allegations that we made specifically about the eight market makers aren't enough if those aren't enough under their definition then by no way a complaint naming market makers would have survived so this is sort of the trap that we've been set up into as far as equitable tolling goes I'm glad counsel brought up the hearing transcripts that are in the record the judge said in the first hearing that he was sensitive to the statute of limitations because it was raised but in the August 2019 record he then said again he was aware of the statute of limitations but it did not outweigh his coordination concerns so the record is clear that the concern here was about coordination with the MDL and not about the over breath of the subpoena and lastly I would just point out that as to roads again we were monitoring LJM and seeing if we could do anything it was clear that until that stay was lifted we could not once the stay was lifted we worked with an expert there's expert analysis in our complaint and also to craft the motion for expedited discovery thank you thank you your honor mr. in so we'll give you a full minute sure so I have two points to make number one on the standing issue the defendants never addressed Lexmark and their entire argument rests on a statutory standing argument that Lexmark completely wipes off the map turning I also want to provide some clarity on the accrual rule judge Lee mentioned the injury accrual rule if the Supreme Court's case in 2019 very clearly distinguishes between the injury accrual rule which it more or less rejects and the fraud specific discovery rule which it identifies in Holmberg versus Armbrecht and Bailey versus Glover that's the rule that this court applied in Schaefer and in that case the defendants did not know the defendants three of the defendants identities until after the court had lifted a discovery stay that was pending while a criminal a parallel criminal case was being prosecuted and so the defendants or the plaintiffs in that case they had their theory of recovery they knew a ton of facts about the the manipulation scheme because of the indictment in that case they even knew some of the defendants but what they did not know was the names that came up as a result of depositions that was stayed as a result of court of a court discovery and so that's very much what happened here you have a manipulation claim you have a theory but you don't have the identities and you don't have the facts underlying the fraud until the court lifts the discovery stay and the defendants produced or an incebo produced the relevant information that we used to establish those facts thank you thank you you think the parties will take the case under advisement